SAMUEL BRUCE *v.* WILLARD HASTINGS.*

*Assumpsit.    Statute of Frauds.    Consideration.    Partnership.*
*Tenants in Common.    Contract.*

The defendant having bargained with N for his farm, stock and produce, agreed with
the plaintiff that they together would carry out the contract with N, sell the prop-
erty in a short time and divide the profits. The defendant took no deed of the farm,
but had it deeded directly to the persons to whom the plaintiff and the defendant
sold it in parcels, and all the property was sold in N's name. The defendant re-
ceived the proceeds of the sales. *Held,* that the plaintiff could maintain an action
of *assumpsit* to recover of the defendant his share of the profits.

*Held,* that the agreement between the plaintiff and the defendant to sell and divide the
profits, though not in writing, was not within the statute of frauds.

*Held,* that the plaintiff having advanced money to the defendant to be paid to N for
the property, and having otherwise aided the defendant in the purchase and sale of
the property, relying upon the defendant's promise to give the plaintiff a portion of
profits, the agreement was founded on sufficient consideration.

ASSUMPSIT.    Plea, the general issue.    Trial by jury, June
term, 1867, STEELE, J., presiding.

On trial it appeared that the plaintiff's claim was for one half
the profits which accrued from the purchase and sale of a farm,
stock and produce.    The plaintiff testified that the defendant had
obtained the refusal of the farm, stock and produce of one Nelson,
at a price named, and proposed to him, the plaintiff, to complete
the trade, if the plaintiff would enter into the speculation with
him ; that their plan of operations was, to buy the property, and
then sell the real estate in parcels and the personal property at
auction, or to sell the whole in some manner which they should
find advisable, so as to clear the matter up in a short time ; that
the plaintiff accepted the proposition, and that he and the defend-
ant bought the property of Nelson in accordance with the refusal
the defendant had obtained, but took no deed ; that as they sold
the real estate to different parties, Nelson deeded directly to these
parties, and the most of the personal property was sold at auction
in Nelson's name ; that the profits of the enterprise were over one
thousand dollars, and that by the agreement the plaintiff was to
have one half of the sum so cleared, and the defendant had that
amount of money which belonged to him, the plaintiff.

* Tried in 1867.

The defendant denied any such agreement. The original bargain with Nelson was made by the defendant before he had any talk with the plaintiff, and Nelson was not informed by the defendant that any one besides the defendant was to be interested in the trade.

The original bargain was merely a refusal of the property at a price named. The refusal was evidenced by a written bond or contract which was not produced. There was no written agreement of any kind between the plaintiff and the defendant. The plaintiff claimed that after the defendant closed the trade in accordance with the refusal, Nelson asked him, the plaintiff, if he was interested in the trade, and he told him he was. The plaintiff testified that he was to share equally with the defendant; that nothing was said about losses, but if there had been a loss he did not know why he should not have had to share it; that if there had been a loss he should have paid one half of it.

Belden testified that Bruce, the plaintiff, told him before the auction that he "was jointly interested" with the defendant.

When the evidence was closed on both sides, the defendant moved that the plaintiff become nonsuit, first, because the action should be account instead of assumpsit; second, because the contract was within the statute of frauds; third, because the contract was without consideration.

The court rendered judgment that the plaintiff become nonsuit, to which the plaintiff excepted.

*Henry C. Belden* and *Thomas Bartlett*, for the plaintiff.

Were the parties jointly interested in that sense, and to that extent, which would preclude the plaintiff's right to recover in assumpsit? This transaction can not be treated as one of that class where, strictly speaking, there was no capital stock, and as a joint contribution of labor, skill and industry to the common business.

In order to create a partnership *inter se*, the parties must have a mutual interest in the capital stock, which is the subject matter of the speculation, or, in other words, they must be joint owners of the property, where the business carried on between them

involves any property, and where there is no stipulation to the contrary. 3 Kent's Com., 24; Story on Part., 37–70; Watson on Part. (1st Am. ed.), 25.

Whether the remedy may be assumpsit, or must be account, depends upon whether the plaintiff had any property in the subject matter of the transaction, and so in the specific money for which it was sold, or whether the form of contract was only a mode of determining his compensation for the assistance which he contributed to the defendant in the purchase and sale of the property. *Mattocks* v. *Lyman et al.*, 16 Vt., 113.

The defendant's second objection is answered in *Trowbridge* v. *Wetherbee*, 11 Allen, 361.

The defendant's third objection rests upon the ground that the contract is without consideration. The plaintiff's testimony tends to show that the defendant could not have consummated his contract with Nelson unless he had pledged to Nelson his individual credit, and that he did pledge his credit before Nelson permitted the defendant to sell the property. And this certainly can not be construed to be anything but a benefit to the defendant, and its so being a benefit is most certainly a sufficient consideration for the contract.

*Timothy P. Redfield*, for the defendant.

Assumpsit does not lie to adjust this matter between the parties. It involves an adjustment of all the gains and losses of the several sales of personal and real estate; the time, labor and expenses of the defendant, the expenses of the auction, of scriveners and surveyors, stamps and deeds: which can only be adjusted in the action of account. *Collamer* v. *Foster*, 26 Vt., 754.

The contract was to purchase an interest in real estate, and therefore within the statute of frauds. *Davis* v. *Farr*, 26 Vt., 592; *Ballard* v. *Bond*, 32 Vt., 355. The defendant had, by virtue of his bond, an "interest in land." The plaintiff purchased one moiety of it at the contract price. Clearly the plaintiff could not sue the defendant for not allowing him to occupy and enjoy his share, or for not conveying to him. If the plaintiff could not sue for the breach of the contract, or for the

property attempted to be conveyed, then he can not sue for the avails of such property when converted into money. Could this defendant have sued the plaintiff, in case of loss, for one half the money paid Nelson ?

The contract is naked of any legal consideration. The only consideration is the mutual promise to convey and to pay for an interest in land. No action could be sustained by the defendant for one half the money paid Nelson for the land. Neither could the plaintiff sustain an action for one half the avails of the land. A promise, not legally binding, is not a legal consideration for the promise of another.

The opinion of the court was delivered by

WILSON, J. This is an action of assumpsit to recover one half the profits which accrued from the purchase and sale of a farm, stock and produce. The defendant insists, *first*, that the action involves the settlement of partnership transactions, and should be account instead of assumpsit ; *second*, that the contract is within the statute of frauds ; and *third*, that the contract is without con-- sideration. The first question is, whether the action of assumpsit will lie upon the agreement under which the plaintiff claims to recover. As a general rule, the action of assumpsit can not be sustained by one partner against his co-partner, in respect to any matter connected with the partnership transactions, or which in-- volve the consideration of their partnership dealings. Chitty on Contracts, 269. But we think a partnership does not arise on the agreement which the evidence tends to show was made be- tween these parties. The defendant, in his own name and upon his own individual credit, bargained with Nelson for the property, but took no deed of it. The defendant sold the real estate to dif-- ferent parties, and Nelson, by direction of the defendant, deeded it directly to those parties. The most of the personal property was sold in Nelson's name by direction of the defendant. It does not appear that the title to the real estate ever vested in either of these parties. It would seem that if the plaintiff acquired any interest in or title to the personal property, he held as a tenant in common with the defendant, and not as a partner. It was not

an agreement to put in capital and labor for the purpose of trade generally, but the agreement, as shown by the evidence, was limited to a single specific purchase by the defendant, with the understanding that the property should be sold as soon as a purchaser or purchasers could be found, and that the defendant would give the plaintiff one half that should be made in the enterprise, in consideration of his agreement to aid and assist the defendant in carrying out his contract with Nelson. The form of the contract has very much the appearance of being a mode of determining the plaintiff's compensation for the assistance which he contributed to the defendant in the purchase and sale of the property. But treating the parties as tenants in common, there can be no serious objection to adjusting the plaintiff's claim in this form of action under the circumstances of the case. We have before remarked that the contract contemplated a single specific purchase of property and sale of it. It has been sold and disposed of according to the understanding and to the satisfaction of both parties. It was the duty of the defendant to pay Nelson the contract price for the property; he did pay him, and the defendant has in his hands nearly one thousand dollars, profits of the enterprise. Neither party had any right, under the agreement, to appropriate the profits of the enterprise for the purpose of further trade on their joint account. Their relation, as tenants in common of the specific property purchased, was at an end when the property was sold in pursuance of the agreement of the parties. If the defendant made such contract, as the testimony tends to show he did make, he is indebted to the plaintiff for one half the profits after deducting the expenses of selling the property. And the defendant is not holding the money as a credit to be balanced in whole or in part by other money or property received by the plaintiff from the enterprise. The adjustment of the plaintiff's claim involves no accounting as to any matter or dealing except what relates to the specific property purchased and sold under the contract, from which the profits in question accrued. It is conceded by the defendant that the whole proceeds of the sales, including the profits, passed into his hands or were paid out for his benefit, and that the plaintiff has never received any part of the property, or avails

of it. Hence, the reason of the rule, that " it would be useless for one tenant in common to recover what, upon taking a general account, he might be liable to refund," is not applicable to the facts of this case. We are agreed that the remedy may be assumpsit under the circumstances of this case.

The next question is, whether the alleged agreement between these parties is within the statute of frauds. The agreement between the defendant and Nelson required the latter to convey the land to the defendant, or to convey it to the purchasers thereof under the direction of the defendant. Nelson did not convey to the defendant, but did convey the land to the parties who purchased it of the defendant, and the defendant received the money. The defendant did just what his agreement with the plaintiff contemplated he should do, that is, he converted the land into money, and this action is brought to recover the plaintiff's share of it under the agreement. The action is not brought to recover damages for the breach of an executory contract for the purchase of land, nor for the purchase of an interest in land. In *Trowbridge* v. *Wetherbee*, 11 Allen, 361, the court held that a parol promise, to pay another a portion of the profits made by the promisor in a purchase of real estate, is not within the statute of frauds ; and, if founded on a sufficient consideration, will support an action.

The only remaining question is, whether the alleged agreement is founded on a sufficient consideration. It appears that the plaintiff claimed, and gave testimony tending to prove, that he advanced money to the defendant to be paid to Nelson for the property, and that the plaintiff otherwise aided the defendant in the purchase and sale of the property, relying upon the defendant's promise to give the plaintiff a portion of the profits as compensation for the assistance which he contributed to the defendant, as above stated. We are of opinion that the consideration is sufficient.

The judgment of the county court is reversed, and the cause is remanded for trial.